UNITED STATES DISTRICT COURT
DISTRICT OF RHODE ISLAND

ARLENE MITCHELL                          :
                                         :
        v.                               :        C.A. No. 07-229ML
                                         :
MICHAEL J. ASTRUE                        :
Commissioner of Social Security          :

## REPORT AND RECOMMENDATION

Lincoln D. Almond, United States Magistrate Judge

        This matter is before the Court for judicial review of a final decision of the Commissioner

of the Social Security Administration ("Commissioner") denying Supplemental Security Income

("SSI") benefits under the Social Security Act ("Act"), 42 U.S.C. § 405(g).  Plaintiff filed her

Complaint on June 21, 2007 seeking to reverse the decision of the Commissioner.  On March 20,

2008, Plaintiff filed a Motion for Reversal of the Disability Determination of the Commissioner of

Social Security (Document No. 8).  On June 4, 2008, the Commissioner filed a Motion for Order

Affirming the Decision of the Commissioner.  (Document No. 13).  Plaintiff filed a Reply on June

18, 2008.  (Document No. 14).

        This matter has been referred to me for preliminary review, findings and recommended

disposition.  28 U.S.C. § 636(b)(1)(B); LR Cv 72.  Based upon my review of the record, the legal

memoranda filed by the parties and independent legal research, I find that there is substantial

evidence in the record to support the Commissioner's decision and findings that Plaintiff is not

disabled within the meaning of the Act.  Consequently, I recommend that the Commissioner's

Motion for an Order Affirming the Decision of the Commissioner (Document No. 13) be

GRANTED and that Plaintiff's Motion for Reversal of the Disability Determination of the Commissioner of Social Security (Document No. 8) be DENIED.

## I.      PROCEDURAL HISTORY

Plaintiff filed an application for SSI on May 15, 2003, alleging disability as of September 16, 1983.  (Tr. 75-78).  The application was denied initially (Tr. 35, 37-40) and on reconsideration. (Tr. 36, 42-44).  Plaintiff requested an administrative hearing.  On November 15, 2004 and January 20, 2005, Administrative Law Judge Barry H. Best ("ALJ") held hearings at which Plaintiff, represented by counsel, a medical expert and a vocational expert, appeared and testified.  (Tr. 317-394).  The ALJ issued a decision on April 11, 2005 finding that Plaintiff was not disabled.  (Tr. 24-34).  On July 14, 2005, Plaintiff filed a second SSI application and was awarded benefits as of April 12, 2005.  (Tr. 9).  While the Appeals Council agreed that the evidence presented on the second claim was "essentially the same" as the evidence presented in this case, it did not reconcile the two decisions but rather indicated that it "does not concur with the favorable determination made in connection with the subsequent claims...." Id.  Thus, the Appeals Council denied Plaintiff's request for review on June 9, 2007.  (Tr. 8-12).  A timely appeal was then filed with this Court.

## II.     THE PARTIES' POSITIONS

Plaintiff argues that the ALJ treated the proceedings as adversarial by convening a second hearing when it was apparent after the initial hearing that Plaintiff should have been found disabled. Plaintiff further argues that the ALJ's decision is not supported by substantial evidence and that the ALJ erroneously rejected, and did not give any consideration to, the length of treatment by Plaintiff's treating psychiatrist and erroneously gave greater weight to the non-examining source.

The Commissioner disputes Plaintiff's claims and argues that there is substantial medical evidence in the record to support the ALJ's findings.  In particular, the Commissioner contends that because Plaintiff was pregnant during most of the period covered by the ALJ's decision, it was not necessary for the ALJ to consider the relatively short periods of time when she was not pregnant.

### III.   THE STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v. Sec'y of Health and Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v. Sec'y of Health and Human Servs., 647 F.2d 218, 222 (1st Cir. 1981).

Where the Commissioner's decision is supported by substantial evidence, the court must affirm, even if the court would have reached a contrary result as finder of fact.  Rodriguez Pagan v. Sec'y of Health and Human Servs., 819 F.2d 1, 3 (1st Cir. 1987); Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991).  The court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  Frustaglia v. Sec'y of Health and Human Servs., 829 F.2d 192, 195 (1st Cir. 1987); Parker v. Bowen, 793 F.2d 1177 (11th Cir. 1986) (court also must consider evidence detracting from evidence on which Commissioner relied).

The court must reverse the ALJ's decision on plenary review, however, if the ALJ applies incorrect law, or if the ALJ fails to provide the court with sufficient reasoning to determine that he or she properly applied the law.  Nguyen v. Chater, 172 F.3d  31, 35 (1st Cir. 1999) (per curiam); accord Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Remand is unnecessary where

all of the essential evidence was before the Appeals Council when it denied review, and the evidence establishes without any doubt that the claimant was disabled.  Seavey v. Barnhart, 276 F.3d 1, 11 (1st Cir. 2001) citing, Mowery v. Heckler, 771 F.2d 966, 973 (6th Cir. 1985).

The court may remand a case to the Commissioner for a rehearing under sentence four of 42 U.S.C. § 405(g); under sentence six of 42 U.S.C. § 405(g); or under both sentences.  Seavey, 276 F.3d at 8.  To remand under sentence four, the court must either find that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim.  Id.; accord Brenem v. Harris, 621 F.2d 688, 690 (5th Cir. 1980) (remand appropriate where record was insufficient to affirm, but also was insufficient for district court to find claimant disabled).

Where the court cannot discern the basis for the Commissioner's decision, a sentence-four remand may be appropriate to allow her to explain the basis for her decision.  Freeman v. Barnhart, 274 F.3d 606, 609-610 (1st Cir. 2001).  On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence.  Diorio v. Heckler, 721 F.2d 726, 729 (11th Cir. 1983) (necessary for ALJ on remand to consider psychiatric report tendered to Appeals Council).  After a sentence four remand, the court enters a final and appealable judgment immediately, and thus loses jurisdiction.  Freeman, 274 F.3d at 610.

In contrast, sentence six of 42 U.S.C. § 405(g) provides:

> The court...may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding;

42 U.S.C. § 405(g).  To remand under sentence six, the claimant must establish: (1) that there is new, non-cumulative evidence; (2) that the evidence is material, relevant and probative so that there is a reasonable possibility that it would change the administrative result; and (3) there is good cause for failure to submit the evidence at the administrative level.  See Jackson v. Chater, 99 F.3d 1086, 1090-1092 (11th Cir. 1996).

A sentence six remand may be warranted, even in the absence of an error by the Commissioner, if new, material evidence becomes available to the claimant.  Id.  With a sentence six remand, the parties must return to the court after remand to file modified findings of fact.  Id.  The court retains jurisdiction pending remand, and does not enter a final judgment until after the completion of remand proceedings.  Id.

## IV.    THE LAW

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 416(i), 423(d)(1); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work, or any other substantial gainful activity which exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-404.1511.

### A.    Treating Physicians

Substantial weight should be given to the opinion, diagnosis and medical evidence of a treating physician unless there is good cause to do otherwise.  See Rohrberg v. Apfel, 26 F. Supp. 2d 303, 311 (D. Mass. 1998); 20 C.F.R. § 404.1527(d).  If a treating physician's opinion on the nature and severity of a claimant's impairments, is well-supported by medically acceptable clinical

and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, the ALJ must give it controlling weight.  20 C.F.R. § 404.1527(d)(2).  The ALJ may discount a treating physician's opinion or report regarding an inability to work if it is unsupported by objective medical evidence or is wholly conclusory.  See Keating v. Sec'y of Health and Human Servs., 848 F.2d 271, 275-276 (1st Cir. 1988).

Where a treating physician has merely made conclusory statements, the ALJ may afford them such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments.  See Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986).  When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless weigh the medical opinion based on the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the medical evidence supporting the opinion; (4) consistency with the record as a whole; (5) specialization in the medical conditions at issue; and (6) other factors which tend to support or contradict the opinion.  20 C.F.R § 404.1527(d).  However, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion.  See 20 C.F.R. § 404.1527(d)(2).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  20 C.F.R. § 404.1527(e).  The ALJ is not required to give any special significance to the status of a physician as treating or non-treating in weighing an opinion on whether the claimant meets a listed impairment, a claimant's residual functional capacity (see 20 C.F.R. §§ 404.1545 and 404.1546), or the application of vocational factors because that ultimate determination is the province of the

Commissioner. 20 C.F.R. § 404.1527(e).  See also Dudley v. Sec'y of Health and Human Servs., 816 F.2d 792, 794 (1st Cir. 1987).

### B.       Developing the Record

The ALJ has a duty to fully and fairly develop the record.   Heggarty v. Sullivan, 947 F.2d 990, 997 (1st Cir. 1991).  The Commissioner also has a duty to notify a claimant of the statutory right to retained counsel at the social security hearing, and to solicit a knowing and voluntary waiver of that right if counsel is not retained.  See 42 U.S.C. § 406; Evangelista v. Sec'y of Health and Human Servs., 826 F.2d 136, 142 (1st Cir. 1987).  The obligation to fully and fairly develop the record exists if a claimant has waived the right to retained counsel, and even if the claimant is represented by counsel.  Id.  However, where an unrepresented claimant has not waived the right to retained counsel, the ALJ's obligation to develop a full and fair record rises to a special duty.  See Heggarty, 947 F.2d at 997, citing Currier v. Sec'y of Health Educ. and Welfare, 612 F.2d 594, 598 (1st Cir. 1980).

### C.       Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. § 416.917; see also Conley v. Bowen, 781 F.2d 143, 146 (8th Cir. 1986).  In fulfilling his duty to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes that such an examination is necessary to enable the ALJ to render an informed decision.  Carrillo Marin v. Sec'y of Health and Human Servs., 758 F.2d 14, 17 (1st Cir. 1985).

D.      **The Five-step Evaluation**

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §§ 404.1520, 416.920.  First, if a claimant is working at a substantial gainful activity, she is not disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, then she does not have a severe impairment and is not disabled.  20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled.  20 C.F.R. § 404.1520(e).  Fifth, if a claimant's impairments (considering her residual functional capacity, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is disabled. 20 C.F.R. § 404.1520(f).  Significantly, the claimant bears the burden of proof at steps one through four, but the Commissioner bears the burden at step five.  Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass. 2003) (five-step process applies to both SSDI and SSI claims).

In determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments, and must consider any medically severe combination of impairments throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B).  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled. Davis v. Shalala, 985 F.2d 528, 534 (11th Cir. 1993).

The claimant bears the ultimate burden of proving the existence of a disability as defined by the Social Security Act.  Seavey, 276 F.3d at 5.  The claimant must prove disability on or before the

last day of her insured status for the purposes of disability benefits.  Deblois v. Sec'y of Health and

Human Servs., 686 F.2d 76 (1st Cir. 1982), 42 U.S.C. §§ 416(i)(3), 423(a), (c).  If a claimant

becomes disabled after she has lost insured status, her claim for disability benefits must be denied

despite her disability.  Id.

### E.    Other Work

Once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts

to the Commissioner to establish that the claimant could perform other work that exists in the

national economy.  Seavey, 276 F.3d at 5.  In determining whether the Commissioner has met this

burden, the ALJ must develop a full record regarding the vocational opportunities available to a

claimant.  Allen v. Sullivan, 880 F.2d 1200, 1201 (11th Cir. 1989).  This burden may sometimes be

met through exclusive reliance on the Medical-Vocational Guidelines (the "grids").  Seavey, 276

F.3d at 5.  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from

an exertional impairment, without significant non-exertional factors.  Id.; see also Heckler v.

Campbell, 461 U.S. 458, 103 S. Ct. 1952, 76 L.Ed.2d 66 (1983) (exclusive reliance on the grids is

appropriate in cases involving only exertional impairments, impairments which place limits on an

individual's ability to meet job strength requirements).

Exclusive reliance is not appropriate when a claimant is unable to perform a full range of

work at a given residual functional level or when a claimant has a non-exertional impairment that

significantly limits basic work skills.  Nguyen, 172 F.3d at 36.  In almost all of such cases, the

Commissioner's burden can be met only through the use of a vocational expert.  Heggarty, 947 F.2d

at 996.  It is only when the claimant can clearly do unlimited types of work at a given residual

functional level that it is unnecessary to call a vocational expert to establish whether the claimant

can perform work which exists in the national economy.  See Ferguson v. Schweiker, 641 F.2d 243, 248 (5th Cir. 1981).  In any event, the ALJ must make a specific finding as to whether the non-exertional limitations are severe enough to preclude a wide range of employment at the given work capacity level indicated by the exertional limitations.

### 1.    Pain

"Pain can constitute a significant non-exertional impairment."  Nguyen, 172 F.3d at 36. Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment which could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence.  20 C.F.R. § 404.1528.  In determining whether the medical signs and laboratory findings show medical impairments which reasonably could be expected to produce the pain alleged, the ALJ must apply the First Circuit's six-part pain analysis and consider the following factors:

(1)    The nature, location, onset, duration, frequency, radiation, and intensity of any pain;

(2)    Precipitating and aggravating factors (e.g., movement, activity, environmental conditions);

(3)    Type, dosage, effectiveness, and adverse side-effects of any pain medication;

(4)    Treatment, other than medication, for relief of pain;

(5)    Functional restrictions; and

(6)    The claimant's daily activities.

Avery v. Sec'y of Health and Human Servs., 797 F.2d 19, 29 (1st Cir. 1986).  An individual's statement as to pain is not, by itself, conclusive of disability.  42 U.S.C. § 423(d)(5)(A).

### 2.    Credibility

Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  Rohrberg, 26 F. Supp. 2d at 309.  A reviewing court will not disturb a clearly articulated credibility finding with substantial supporting evidence in the record.  See Frustaglia, 829 F.2d at 195.  The failure to articulate the reasons for discrediting subjective pain testimony requires that the testimony be accepted as true.  See DaRosa v. Sec'y of Health and Human Servs., 803 F.2d 24 (1st Cir. 1986).

A lack of a sufficiently explicit credibility finding becomes a ground for remand when credibility is critical to the outcome of the case.  See Smallwood v. Schweiker, 681 F.2d 1349, 1352 (11th Cir. 1982).  If proof of disability is based on subjective evidence and a credibility determination is, therefore, critical to the decision, "the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding."  Foote v. Chater, 67 F.3d 1553, 1562 (11th Cir. 1995) (quoting Tieniber v. Heckler, 720 F.2d 1251, 1255 (11th Cir. 1983)).

## V.    APPLICATION AND ANALYSIS

Plaintiff was forty years old at the time of the ALJ's decision and had obtained a GED.  (Tr. 321-322).  Plaintiff alleged disability beginning in September 1983 (Tr. 75) due to a breathing disorder (COPD), depression and anxiety disorder with panic attacks. (Tr. 95).  Plaintiff has past work history as a CNA, Cashier and Engraver/Key Maker.  (Tr. 104, 323).  At the time of the ALJ

hearing, Plaintiff was pregnant and was living with six of her eight children (her two oldest children were living on their own).  (Tr. 322).

Records from April 2003, show that Plaintiff stopped working for reasons unrelated to any medical limitations; her hours at one job were reduced to a level that she considered unacceptable, and she lost another job due to a criminal background check.  (Tr. 281).  In May, she was asked to return to work after the police acknowledged making an error in their report, but apparently she did not accept the offer to return.  (Tr. 282).  Plaintiff was somewhat oppressed by family problems over the next few months, (Tr. 284-286), but was noted to be feeling better in October 2003.  (Tr. 287). In November, Plaintiff reported several recent panic attacks, but in December she stated that she was doing well and that her panic condition was under better control.  (Tr. 287, 289).

In January 2004, Plaintiff reported that she was pregnant again, and she expressed concern that this might "set her back," and undo her recent progress.  (Tr. 290).  Plaintiff had a miscarriage the following month and experienced grief thereafter.  (Tr. 291).  In April 2004, Plaintiff reported, among other things, that she was feeling "frazzled" by family circumstances, but reported that she had not had any panic attacks for two months.  (Tr. 292).  In May, Plaintiff felt even more stress over the likelihood her family would need to move, but, although she felt anxiety, she did not experience full panic.  (Tr. 293).  In addition, during this period, Plaintiff returned to work.  (Tr. 293-294).

In June 2004, Plaintiff reported that she had been working three to four days per week, "enjoys her work" and was doing quite well overall.  (Tr. 294).  In July, she reported that she had lost her job when she missed work apparently due to her mother's hospitalization.  (Tr. 295). Plaintiff described anxiety over the current state of her affairs but this had not deterred her desire

to look for another job.  Id.  Plaintiff reported only one panic attack, which was due to her concerns

finding her way home from work one evening.  Id.  In August, Plaintiff reported she was two months

pregnant and not working any longer because she felt too anxious to work.  (Tr. 296).  Records from

the remainder of the relevant period show Plaintiff to have been experiencing quite severe anxiety

and panic. (Tr. 297-299, 302-305.)

### A.    The ALJ's Evaluation of the Medical Evidence Was Not Erroneous

The ALJ decided this case adverse to Plaintiff at Step 5.  Plaintiff was found to have the

severe impairments of adjustment disorder with depression and anxiety and asthma/COPD.  (Tr. 33,

Finding 2).  The ALJ assessed an RFC for a significant range of light work "with the further non-

exertional limitation of the need to take 1-2 unscheduled breaks a week for periods up to 20 minutes

due to her mental impairments."  (Id., Finding 5 and 10).  Based on the testimony of the VE and

Plaintiff's RFC, the ALJ concluded that there are a significant number of jobs available in the

regional economy which could be performed by Plaintiff.  (Tr. 34, Finding 11).

Plaintiff's primary issue on appeal is the ALJ's heavy reliance on the opinions of the ME,

Dr. Gitlow, and the ALJ's decision to give less probative weight to the opinion of Dr. Rodgers, a

treating psychiatrist.  In her brief, Plaintiff accuses the ME of being "clearly biased" and contends

that his opinion was based on an inaccurate assessment of the medical evidence and speculation

about Plaintiff's impairments.  (Document No. 14 at p. 3).  Plaintiff argues that the ALJ treated the

process as "adversarial" and scheduled a second hearing to support his "predetermined theory" of

the case.  (Document Nos. 8-2 at p. 4 and 14 at p. 3).  In effect, Plaintiff suggests that the ALJ

specifically sought out Dr. Gitlow for a second hearing in order to defeat Plaintiff's claim.

Plaintiff, however, offers no evidence to support these serious allegations of bias and manipulation.  The record in this case is highly complicated and the ALJ cannot be faulted for seeking input from a medical expert.  In fact, this Court has remanded past cases for further hearing, in part, because an ALJ did not seek such input and substituted his or her own lay assessment of medical evidence for medical opinion.

After the initial ALJ hearing, the ALJ scheduled a supplemental hearing and requested that Dr. Stuart Gitlow attend and testify as a medical expert.  (Tr. 66, 69-72).  Dr. Gitlow is Board Certified in psychiatry and neurology and has a primary specialty in addiction psychiatry and a secondary specialty in forensic psychiatry.  (Tr. 68).  Plaintiff does not (and has no basis to) challenge Dr. Gitlow's qualifications as a medical expert.  Plaintiff's medical record includes diagnoses of affective and anxiety-related disorders and alcohol and cocaine dependence in remission, and indications of significant family stressors, multiple pregnancies during the relevant period and a history of taking various psychotropic medications.  Dr. Gitlow's areas of specialty made him particularly suited to opine on Plaintiff's case.

At the hearing, Dr. Gitlow questioned the duration of Plaintiff's use of Klonopin – a benzodiazepine used to treat panic disorders.  (Tr. 350-351).  Dr. Gitlow opined that "when used over extended period of time [Klonopin] causes more anxiety and depression than it...helps with." (Tr. 353).  Although Dr. Gitlow described Plaintiff's Klonopin use as a "substantial sedative dependence" (Tr. 350), he was "unclear" as to "the extent to which [Plaintiff's] Klonopin prescription is a contributing factor here."  (Tr. 353).  In an unusual twist, Plaintiff's treating psychiatrist, Dr. Rodgers, sent a letter to the ALJ after the second, supplemental hearing in which he took issue with Dr. Gitlow's testimony regarding Klonopin addiction.  (Ex. 24F).  Dr. Rodgers

did, however, note that he hoped Plaintiff could "begin reducing her reliance on Klonopin in the near

future." (Tr. 309).

Although both sides focus significant attention on the Klonopin issue, it is a red herring.[1]

After Dr. Gitlow offered his opinion on long-term Klonopin usage, the ALJ posed several questions

to Dr. Gitlow in which he was asked to assume that the ALJ was "not in a position to second-guess"

the Klonopin prescription and to take into account any consequential symptoms. (See, e.g., Tr. 355).

The ALJ accurately stated in his decision that "Dr. Gitlow's testimony further reflected that in the

absence of a substance-induced mood disorder [Plaintiff's] symptoms in a person not taking

Klonopin would be consistent with a diagnosis of an adjustment disorder with anxiety and

depression." (Tr. 27) (emphasis in original). The ALJ then went on to evaluate Plaintiff's functional

capacity "even considering effects of anxiety which may...have been related to use of Klonopin."

(Tr. 27-32). Thus, the issue of Klonopin usage was not material to the ALJ's decision.

The second complicating factor in this case is Plaintiff's multiple pregnancies during the

relevant period and the interrelationship of such pregnancies with the "duration requirement." See

20 C.F.R. §§ 416.909 and 416.922 (an impairment must have lasted or be expected to last for a

"continuous period of at least twelve months" to support a disability finding). Dr. Gitlow testified

that "the pregnancy is also an issue and individuals do have medically-induced mood and anxiety

disorders which can be a direct result of pregnancy...[s]o that needs to be taken into consideration

as well." (Tr. 354). Further, Dr. Rodgers agreed that "there is a correlation between when [Plaintiff]

---

[1] Plaintiff also argues that the ALJ erred by relying on unidentified "medical literature'" in evaluating Dr. Gitlow's opinion, (Tr. 27 n.3), without first proffering such evidence to Plaintiff. Plaintiff is incorrect. The ALJ did not reach outside the record as Dr Gitlow referred to the literature in his testimony. In particular, Dr. Gitlow refers to "explicit limitations" contained in the "PDR," i.e., the Physicians' Desk Reference, a commonly used medical reference. (Tr. 373).

is prenatal and when her panic disorder and depression are most severe." (Tr. 308).  In fact, Dr. Rodgers' treatment notes of October 25, 2004 indicate that Plaintiff was experiencing increased panic "as a result of pregnancy." (Tr. 299).

Since pregnancy is, of course, temporary by nature and a normal pregnancy term is approximately nine months, pregnancy-induced impairments may fail to meet the twelve-month "duration requirement" noted above.  In fact, the ALJ accurately notes that "Dr. Gitlow's testimony reflects that when not pregnant or overwhelmed by chaotic family situations, [Plaintiff's] functioning was not significantly impaired for any continuous period of twelve months." (Tr. 28). Since this is an SSI case, the relevant period started with Plaintiff's application in May 2003.  The treatment records from Dr. Rodgers' office show improvement in Plaintiff's condition in 2003.  For instance, in October, Plaintiff looked "brighter" and "more engaged" than ever and she reported feeling better. (Tr. 287).  In November, the records noted Plaintiff making "some improvement" and reporting that "today is a good day."  Id.  In December, Plaintiff was reported as "generally doing much better with panic and depression." (Tr. 289).  Then, in January 2004, Plaintiff reported that she was pregnant, and expressed concern that "she is finally feeling better mentally and that her pregnancy will set her back."  (Tr. 290).  Plaintiff unfortunately miscarried and suffered a period of grieving her loss. (Tr. 291-292).  In May, Plaintiff started to make some improvement and made "movement towards pursuing employment." (Tr. 293).  Plaintiff returned to work in June and was reportedly "doing quite well" with her new job and had a "low to moderate" level of anxiety which was "within normal limits." (Tr. 294).

Plaintiff's anxiety increased in July (Tr. 295) and in August she reported she was two months' pregnant. (Tr. 296).  Plaintiff reported that her anxiety was "too intense and debilitating

to work." Id.  In September, the records reflect an increase in her anxiety and panic "since becoming

pregnant."  (Tr. 297).  Her counselor questioned if this was "hormonal related or if unconscious

reaction to stress of pregnancy and anticipated responsibilities."  Id.  The increased panic and

anxiety continued during the pregnancy.  (Tr. 298-299, 302-305).  Thus, the ALJ's findings as to

pregnancy and the duration requirement are supported by the record.

The ALJ properly exercised his discretion to weigh the medical evidence and resolve

evidentiary conflicts.  See Rivera-Torres v. Sec'y of Health and Human Servs., 837 F.2d, 4, 5 (1st

Cir. 1988) (resolution of evidentiary conflicts is within the province of the ALJ).  Plaintiff contends

that the ALJ violated the treating physician rule (20 C.F.R. § 416.927(d)) by favoring Dr. Gitlow's

opinion over Dr. Rodgers' opinion.  Because a treating physician is typically able to provide a

detailed longitudinal picture of a patient's impairments, an opinion from a treating source is

generally entitled to considerable weight if it is well supported by clinical findings and not

inconsistent with other substantial evidence of record.  20 C.F.R. § 416.927(d); see also Castro v.

Barnhart, 198 F. Supp. 2d 47, 54 (D. Mass. 2002) (The ALJ "may reject a treating physician's

opinion as controlling if it is inconsistent with other substantial evidence in the record, even if that

evidence consists of reports from non-treating doctors.").  The amount of weight to which a treating

source opinion is entitled depends in part on the length of the treating relationship and the frequency

of the examinations.  20 C.F.R. § 416.927(d)(1).  If a treating source's opinion is not given

controlling weight, the opinion must be evaluated using the enumerated factors and "good reasons"

provided by the ALJ for the level of weight given.  20 C.F.R. § 416.927(d)(2).

In his decision, the ALJ declined to give controlling weight to Dr. Rodgers' opinions and he

thoroughly identified his reasons for that decision.  Since such reasons are supported by the record,

the ALJ's decision is entitled to deference.  The ALJ did not find Dr. Rodgers' opinions "persuasive," in part, because they were not supported by the record.  In his letter to the ALJ, Dr. Rodgers indicated that Plaintiff was unable to return to work in May 2003 because the stress of a mistake on her "BCI" report "exacerbated her anxiety."  (Tr. 307).  However, the treating records from Dr. Rodgers' office reflect that Plaintiff was facing numerous family, child custody and relationship issues at the time (Tr. 282-283) and conclude that "numerous issues aggravating anxiety yet primary concern is welfare of son."  (Tr. 282).  Dr. Rodgers also represented in his letter to the ALJ that Plaintiff's next return to work in June 2004 was unsuccessful because "traveling to and from the work setting triggered more panic attacks."  (Tr. 307).  Again, the records do not fully support Dr. Rodgers' statement.  Although the July 19, 2004 record reflects one instance of a panic attack concerning Plaintiff's ability to get home from work, (Tr. 295), the June 7, 2004 record indicates that Plaintiff appeared "relaxed, calm and focused" and stated she enjoyed her work.  (Tr. 294).  Plaintiff stated in June that her "primary concern with work is guilt feelings about leaving her children."  Id.  Then, in July, the record indicates that Plaintiff lost her job because she called out due to her mother's hospitalization.  (Tr. 295).

Plaintiff has shown no reversible error in the ALJ's evaluation of the medical evidence of record.

### B.    The ALJ's Failure to Inquire Under SSR 00-4p Does Not Require Remand in This Case

Plaintiff also argues that remand is required because the ALJ violated his administrative responsibility to ask the VE if his testimony is consistent with the Dictionary of Occupational Titles ("DOT").  SSR 00-4p requires that an ALJ affirmatively ask a VE if his or her testimony is consistent with the occupational information contained in the DOT.  It is undisputed that the ALJ

did not make this inquiry.  Plaintiff offers no evidence or argument that the VE's testimony in fact contradicted the DOT.  Rather, Plaintiff essentially seeks remand based solely on the technicality of failing to ask the question.

Although the First Circuit has not addressed this particular issue, other courts in this Circuit have held that "the mere failure to ask such a question cannot by itself require remand; such an exercise would be an empty one if the [VE's] testimony were in fact consistent with the DOT." Hodgson v. Barnhart, No. 03-185-B-W, 2004 WL 1529264 (D. Me. June 24, 2004).  See also Wilcox v. Barnhart, No. Civ. 03-408-PB, 2004 WL 1733447 (D.N.H. July 28, 2004).  In this case, the VE's testimony before the ALJ was straightforward.   (Tr. 337-340, 342-343, 392-393). Plaintiff's counsel cross-examined the VE and has not presented any evidence of a conflict or other prejudicial error.  Since Plaintiff has not argued or identified any such inconsistency, her argument is purely technical and constitutes, at worst, harmless error. Giles v. Barnhart, No. 06-28-B-W, 2006 WL 2827654 at *3 (D. Me. Sept. 29, 2006) (ALJ's failure to ask the SSR 00-4p question to the VE is harmless where claimant could return to past relevant work "as she performed it.").

Plaintiff further argues that the ALJ mischaracterized the VE's testimony by stating that the nonproduction jobs in question could be done by someone needing unscheduled, twenty-minute breaks twice a week.  Document No. 8-2 at p. 9.  In fact, the record shows that the ALJ did not misconstrue the VE's testimony on this issue.  See Tr. 338-340, 343-343.  The ALJ correctly interpreted the VE's testimony, and Plaintiff has shown no error in the ALJ's utilization of the VE's testimony in determining disability status.

**C.      Plaintiff Has Not Shown That Defendant Has a Legal Duty to Reconcile Inconsistent Disability Determinations**

It is undisputed that Plaintiff is the subject of two contradictory disability determinations. In this case, Plaintiff was found to be not disabled through April 11, 2005. (Tr. 34). A subsequent application resulted in a disability finding beginning April 12, 2005. (Tr. 14). The Appeals Council indicated its disagreement with the second decision but noted the absence of any regulatory basis to reopen that case. Id.

In her Reply Brief, Plaintiff criticizes Defendant's failure to reconcile these two decisions and to explain why the same evidence resulted in contradictory opinions. (Document No. 14 at pp. 2-3). Plaintiff does not, however, offer any legal support for this argument. The issue currently before this Court is whether the first ALJ determination is legally correct and supported by substantial evidence. The issue is not whether this Court would render the same decision if it were in the shoes of the ALJ. The second determination (and the supporting record) are simply not before the Court and are not legally relevant to this case. While practical considerations led this Court to ask Defendant to consider a voluntary remand in view of the subsequent disability award, Defendant reviewed the matter and decided against such a remand. At that point, the second disability decision was no longer relevant – legally or practically.

**D.      The ALJ's Failure to Include Environmental Limitations in Plaintiff's RFC is Harmless Error**

Both of the state agency reviewing physicians (Exs. 14F and 15F) included environmental limitations in their physical RFC assessments. Due to Plaintiff's asthma, they limited concentrated exposure to temperature extremes, wetness and fumes. (Tr. 218, 227). The ALJ limited Plaintiff to light work but did not include any environmental limitations in his RFC or include such

limitations in his examination of the VE.  While Defendant concedes that it "would have been better" if the ALJ had done so, (Document No. 13 at p. 4), Plaintiff has not shown how the environmental limitations would preclude her from any of the jobs discussed by the VE.  The VE identified waitress, counter attendant, cashier or reservation clerk.  (Tr. 393).  The ALJ's failure to explicitly consider the impact of relatively minor environmental limitations to these light duty, nonproduction jobs is, at worst, harmless error.

## VI.    CONCLUSION

For the reasons stated above, I recommend that the Commissioner's Motion for Order Affirming the Decision of the Commissioner (Document No. 13) be GRANTED and that the Plaintiff's Motion for Reversal of the Disability Determination of the Commissioner of Social Security (Document No. 8) be DENIED.

Any objection to this Report and Recommendation must be specific and must be filed with the Clerk of the Court within ten (10) days of its receipt.  See Fed. R. Civ. P. 72(b); LR Cv 72. Failure to file specific objections in a timely manner constitutes waiver of the right to review by the District Court and the right to appeal the District Court's decision.  See United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 605 (1st Cir. 1980).


_____
LINCOLN D. ALMOND
United States Magistrate Judge
September 12, 2008